[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 39, and the defendant husband, 37, married in New Jersey on June 24, 1883. The following week the defendant began a medical residency and remained in training until July of 1989. During that time, he was a resident in general surgery for two years, a resident in orthopedic surgery for four years, at the Westchester Medical Center. After taking a six month hiatus, he accepted a fellowship in Texas that lasted until July, 1991. The defendant returned from Texas in August, 1991. On September 5, CT Page 10764 1991 the defendant made an employment agreement with New Milford Orthopedic Associates, P.C., for a three year period with salary starting at $100,000.00, $20,000.00 annual raises, a fee share and other benefits including use of a leased auto, and a buy-in provision available after three years (Defendant's Exhibit A). The defendant was still an employee at the time of trial because he was not invited into the partnership (cf. Defendant's Exhibit B). Currently, he is an employee at will, for the original contract has been completed. One of the owners of the practice, Dr. Alfred E. Mitchell, M.D., described his surgical skills as excellent. The fault lay with his personality and inattention to administrative details.
The plaintiff is a lawyer, admitted to the New York Bar in 1981 and in private practice since then except for the interruption of her pregnancy in 1991 which culminated in the birth of the parties' only child, Daniel, born September 26, 1991.
The parties made their first home in Metuchen, New Jersey for a year until they purchased a home in Edison, New Jersey, utilizing 95% financing. That home was sold when they moved to a Mount Vernon, New York co-op. From there they moved to Chappaqua, New York. Their final home was purchased in Wilton, Connecticut in October, 1989 for $385,000.00 with a 20% down payment generated by the plaintiff's earnings. The Wilton property was sold in December, 1993 and the net proceeds are still being held in escrow.
During the early years of their marriage the plaintiff was employed by prominent law firms in New York City, with the attendant 10 to 14 hour day, often being sent home to New Jersey in a taxi at the firm's expense. Her earnings ranged from $52,000.00 in 1983 to her highest year earning $180,000.00. The plaintiff concentrated in real estate which led her to invest in a Florida Condo unit in 1988 with another lawyer, Emmet Delaney, who put up $17,127.00 for her. When the condo was sold in 1993, Mr. Delaney was repaid the advance.
Mr. Delaney and the plaintiff worked for the same client, occupied offices in the client's building and both had expertise in real estate development. This association gave concern to the defendant who attributed much of their marriage difficulties to the plaintiff's friendship with Mr. Delaney.
The parties first separation occurred in early 1986 and lasted three months. The reconciliation was founded on the defendant's CT Page 10765 promise to exercise more restraint over his finances and spending habits. The final separation occurred on June 20, 1993 when the defendant moved from the marital residence. The defendant continued to give the plaintiff his entire paycheck less some spending money from July, 1993 through December, 1993 as well as a $5,000.00 bonus received in July, 1993.
During the first eight years of their marriage the court finds that the plaintiff was the principal wage earner and carried the family's finances. The court further finds that the defendant's financial habits bordered on the irresponsible at times. A considerable amount of evidence was produced on this subject, but the court does not find it necessary to detail the various episodes of financial disagreement had between the parties.
The court is not satisfied with the defendant's description of the basement apartment episode which occurred during the initial separation. The defendant claimed he observed his wife through a window in a state of partial undress eating pizza in the presence of fully dressed man the defendant claimed was Emmet Delaney. Instead of entering the apartment and confronting the visitor, he retreated to a friend's home. We are left solely with his unconfirmed, unseen, uncorroborated observation as described to his friend. As to his claims that his wife made admissions, the court found the following question by the plaintiff's attorney and the defendant's answer the most reliable.
"Q Was this letter to hold your marriage together?
 A This letter is an attempt because Sheryl never admitted to me about Mr. Delaney outright, so I — she always denied. I ate a lot of crow and said, please, Sheryl, let's make our — let's make our marriage work. I said what I needed to say at the time when I thought all the guilt was on my shoulders in a very emotional state to try to make the marriage work."
Finally, the plaintiff's recent association with Delaney during this litigation has no bearing on the breakdown, Venuti v.Venuti, 185 Conn. 156.
The plaintiff has been working part time from her home. She plans to become admitted to the Connecticut bar. She and Daniel are living in a small rented home in Darien for $1,950.00 monthly. An au pair is employed at $635.00 monthly to assist with the day CT Page 10766 care. The plaintiff is generating about $500.00 weekly net disposable income at the present time.
The defendant's practice generates about $2,100.00 weekly net disposable income presently. He has been paying $4,000.00 monthly to plaintiff as unallocated alimony and child support. He has purchased a home in New Milford near his work. He values the property at $164,000.00 encumbered with a mortgage balance of $131,000.00.
Since the parties' combined net disposable income exceeds the child support guideline maximum, an unallocated order is appropriate.
Custody and visitation was settled via a stipulation between the parties and approved by the court on January 5, 1995 (Steinberg, J.) At the conclusion of the evidence before this decision on the financial orders was reserved, the court entered a dissolution decree on June 14, 1995.
Having reviewed the evidence in light of the statutory criteria, the court enters the following orders.
1. The defendant shall pay to the plaintiff the sum of $4,000.00 monthly as unallocated alimony and child support. He shall continue to pay an additional $1,000.00 monthly until the pendente lite order arrears is paid in full. A wage withholding order is entered, contingent, payments to be made directly to the plaintiff. These orders are predicated on the present circumstances, the plaintiff's current earnings and are not founded on the earning capacity of the plaintiff which she demonstrated in the years prior to 1991.
The defendant's obligation to pay said periodic alimony to the plaintiff shall continue for 24 months non-modifiable as to amount for any reason except for the death of either party. Thereafter, the alimony award shall be subject to modification or termination upon the death of either party, the plaintiff's remarriage or further court order, e.g. pursuant to § 46b-86 (b), C.G.S. The obligation to pay alimony, if not sooner terminated, shall cease on January 1, 2000 and such termination date is non-modifiable.
2. The defendant shall continue to provide the minor child with all available medical coverages afforded to the defendant or available to him through his employment. The parties shall equally CT Page 10767 bear all uninsured bill balances incurred for the health care of the minor child. This provision is subject to § 46b-84(d) C.G.S.
3. The plaintiff shall provide her own medical coverage at her sole expense.
4. The defendant shall name the minor child as primary beneficiary on his AMA life insurance providing $500,000.00 coverage so long as he is obliged to support the child. This order is in the nature of child support and is modifiable upon the subsequent birth to or adoption of any other children by the defendant.
5. The plaintiff shall continue to maintain the two life insurance policies having a total face value of $200,000.00 naming the minor child as primary beneficiary until the child support obligation expires. This order is modifiable on the same terms as is Order #4, supra.
6. The plaintiff is awarded the 1993 Ford Explorer.
7. The defendant is awarded the 1981 Fiat Spider, the 1986 Chevrolet and the 1981 Fiat.
8. The tangible items of personal property, furniture, furnishings and household items shall remain the sole property of the party now having possession.
9. The bank accounts, IRA accounts, 401(k) funds, profit sharing funds or other deferred compensation funds shall be retained by the party now owning same.
10. The plaintiff shall be solely responsible for her liabilities except for the New Milford Bank debt.
11. The defendant shall be solely responsible for all the debts listed on his financial affidavit and he shall be solely responsible for satisfying the joint debt due the New Milford Bank Trust saving the plaintiff harmless and indemnified.
12. The escrow balance now remaining from the sale of the parties' home shall be divided by paying $35,000.00 to the plaintiff and the remaining balance to the defendant.
13. The plaintiff is awarded an allowance to prosecute in the CT Page 10768 sum of $20,000.00 payable by the defendant in two equal installments, the first due on January 10, 1996 and the final installment due on July 10, 1996.
14. The plaintiff's claim for compensatory alimony is denied. Although the defendant's earnings during his residency and fellowship years were less than the plaintiff's, he had obtained his medical degree before the marriage. As commented above, the plaintiff's career was not delayed by his residency. The court finds no basis for the plaintiff's claim.
15. The defendant's cross-complaint is dismissed as moot. Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, J.